IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:25-CV-00832-KDB-SCR

| | |
|---|---|
| EBONY SHERISSE LUCAS,<br><br>Plaintiff,<br><br>v.<br><br>MCDOWELL QUAIL, LLC; THE DWELL AT CARMEL APARTMENTS; PEGASUS RESIDENTIAL, LLC; MCCANN REALTY PARTNERS, LLC; HAMILTON BAY APARTMENTS; HAMILTONS BAY CONDOMINIUM ASSOCIATION, INC.; EXPERIAN INFORMATION SOLUTIONS, INC.; NACAM MANAGEMENT LLC; EQUIFAX INFORMATION SERVICES, LLC; ARRA VICTORIA NELSEN; NATIONAL CREDIT SYSTEMS, INC.; THE LAW OFFICE OF BRETT M. BORLAND, P.C.; JAMES RAYE; AND TRANSUNION LLC,<br><br>Defendants. | **MEMORANDUM AND ORDER** |

**THIS MATTER** is before the Court on Plaintiff Ebony Sharisse Lucas' Motion for Reconsideration (Doc. No. 4) of the Court's denial of her Motion to Proceed in Forma Pauperis (Doc. No. 3). The Court has carefully considered this motion and the additional facts provided by Lucas, which details her financial circumstances. Based on that examination, the Court finds that while Lucas' reasonable expected expenses are slightly less than her expected income, she also

1

supports a disabled dependent and does not otherwise have sufficient assets with which to pay the filing fee. Therefore, Lucas' Motion will be granted.

## I. FACTS AND PROCEDURAL HISTORY

Lucas alleges that in 2021, she resided at Defendant Hamilton Bay Condominiums (the "Condo"), which was managed by Defendants NACAM Management, LLC ("NACAM") and Arra Victoria Nelsen ("Nelsen"). Doc. No. 1 at ¶ 26. Lucas further asserts that eviction proceedings were initiated against her for not paying rent, and in May 2022, she received a "move-out balance sheet" reflecting an alleged debt of $178.13 in homeowners' association ("HOA") fees. *Id.* at ¶¶ 28, 30. In June 2022, Nelsen transmitted the balance sheet, which included the disputed HOA charges, to Defendant National Credit Systems, LLC ("NCS"), a debt collector. *Id.* at ¶¶ 29, 31. Finally, Lucas contends that Defendants NACAM, Nelsen, NCS and the Law Offices of Brett M. Borland ("Law Office"), another debt collector, thereafter engaged in improper collection practices and "transmitted these false debts" among themselves. *Id.* at ¶ 32.

Lucas also alleges that she subsequently leased an apartment from Defendant The Dwell at Carmel Apartments ("Dwell"), which was initially owned by Defendant McDowell Quail, LLC ("McDowell"), and later by Defendant McCann Realty Partners, LLC ("McCann"), and was managed by Defendant Pegasus Residential, LLC ("Pegasus"). *Id.* at ¶¶ 9–12. Upon vacating the apartment in October 2022 after a four-month tenancy, Lucas owed a balance of $1,600. *Id.* at ¶ 22. In February 2023, after the balance remained unpaid, the debt was transferred to NCS. *Id.* at ¶¶ 20–25. Lucas alleges, however, that Dwell reported a "false[ly] inflated balance of $3898.56" to Defendants NCS, the Law Office, and the three credit reporting agencies–Defendants Experian Information Solutions, Inc., Equifax Information Services, LLC, and TransUnion, LLC

(collectively, the "Credit Bureaus"). *Id.* at ¶ 24. Despite disputing the debt with NCS and the Credit Bureaus, Lucas alleges that the balance remained on her credit reports. *Id.* at ¶ 25.

Based on these events, Lucas initiated the present action, asserting eighteen causes of action, including violations of the Fair Credit Reporting Act ("FCRA"), Truth in Lending Act ("TILA"), Fair Debt Collection Practices Act, Computer Fraud and Abuse Act ("CFAA"), Gramm-Leach Bliley Act ("GLBA"), Privacy Act of 1974, Securities Exchange Act, North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA"), and Racketeer Influenced and Corrupt Organizations Act ("RICO"). Lucas also asserts common law and statutory claims for wire fraud, intrusion upon seclusion, fraud, constructive fraud, breach of contract, invasion of privacy, unjust enrichment, aiding and abetting fraud, and libel/defamation.

## II. DISCUSSION

Because Plaintiff is proceeding IFP, the Court must review the Complaint to determine whether it–or any part of it–is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). *See Ejim v. Thomas J. Henry, PLLC,* No. 1:25-CV-1103-ADA-SH, 2025 WL 2399237 (W.D. Tex. July 29, 2025), *report and recommendation adopted,* No. A-25-CV-01103-ADA-SH, 2025 WL 2394553 (W.D. Tex. Aug. 18, 2025) (dismissing some, but not all of the claims in the complaint for failing to state a plausible claim for relief); *Brown v. Registrar of Deeds for Cleveland Cnty.*, No. 1:24-CV-00283-MR-WCM, 2024 WL 4896698, at *2 (W.D.N.C. Nov. 26, 2024), *aff'd,* No. 25-1267, 2025 WL 2506094 (4th Cir. Sept. 2, 2025) (explaining that under § 1915, courts must "conduct an initial review and dismiss the complaint, or any portion of the complaint if it is frivolous, malicious, or fails to state a claim upon which relief may be granted"). In its frivolity review, the Court must determine whether the Complaint raises an indisputably meritless legal theory or is

founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. *Neitzke v. Williams*, 490 U.S. 319, 327–28 (1989). Furthermore, a pro se complaint must be construed liberally. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in the Complaint which set forth a claim that is cognizable under federal law. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). To be sure, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient to suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### A. Fair Credit Reporting Act

Lucas' first claim alleges that "Defendants furnished and failed to correct false credit information." Doc. No. 1 at ¶ 34. Specifically, she contends that Dwell reported a "false[ly] inflated balance" to debt collectors and the credit bureaus, and that NACAM and Nelsen engaged in similar conduct. *Id.* at ¶¶ 24, 29, 32. Lucas further alleges that she disputed the Dwell debt with "NCS and the Credit Bureaus," but that the debt remained on her credit reports until it was later discharged in bankruptcy. *Id.* at ¶ 25.

Under the FCRA, when a consumer disputes the accuracy of an item in her file, the consumer reporting agency ("CRA") must reinvestigate and delete or correct unverifiable information. 15 U.S.C. § 1681i(a). The CRA must also notify the furnisher of the dispute. *Saunders v. Branch Banking and Tr. Co. Of VA*, 526 F.3d 142, 148 (4th Cir. 2008) (citing 15 U.S.C. § 1681i(a)(2)). Upon receipt of such notice, the furnisher must investigate, review all relevant information, report results to the CRA, and, if the information is incomplete or inaccurate, notify all other nationwide CRAs to which the information was furnished. *See* 15 U.S.C. § 1681s–2(b)(1).

It is unclear whether Lucas intends to allege violations by the Credit Bureau CRAs, the furnishers (Dwell, NACAM, Nelsen and the debt collectors), or both. Nevertheless, Lucas has alleged sufficient facts to state a non-frivolous claim under the FCRA. Accordingly, this claim will be permitted to proceed.

B. <u>**Truth in Lending Act**</u>

TILA was enacted to "to help consumers 'avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing.'" *Lavis v. Reverse Mortgage Sols., Inc.*, 40 F.4th 181, 183 (4th Cir. 2022) (quoting *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259, 261 (2015)). A "creditor" under TILA is defined narrowly as one who both regularly extends consumer credit payable in more than four installments or subject to a finance charge, and to whom the debt is initially payable. *Cetto v. LaSalle Bank Nat. Ass'n*, 518 F.3d 263, 269 (4th Cir. 2008) (quoting 15 U.S.C. § 1602(f)). Actions for monetary damages under TILA must be brought within one year of the violation. 15 U.S.C. § 1640(e).

Lucas alleges that Defendants violated TILA by disclosing "unauthorized debts without consent" between 2021–2023. Doc. No. 1 at ¶¶ 20–32, 35. However, she does not allege facts that establish Defendants could be "creditors" within the meaning of the statute and therefore subject its provisions. Moreover, even if they were, Lucas' TILA claims are time-barred because more than one year has elapsed since the alleged violations. Accordingly, the TILA claim will be dismissed.

C. <u>**Fair Debt Collection Practices Act**</u>

Lucas next alleges that "Defendants used unfair, deceptive, and unlawful collection practices." Doc. No. 1 at ¶ 4. The FDCPA prohibits abusive and deceptive practices by debt collectors, and covers debt collectors who regularly collect, or attempt to collect consumer debts.

*See Jackson v. Sagal*, 370 F. Supp. 3d 592, 600 (D. Md. 2019) (citations omitted). To state a claim, Lucas must allege that (1) she was the "object of collection activity arising from consumer debt;" (2) the defendant is a "debt collector" as defined by the Act; and (3) the defendant has engaged in conduct prohibited by the Act. *Id.* (quoting *Sterling v. Ourisman Chevrolet of Bowie Inc.*, 943 F. Supp. 2d 577, 585 (D. Md. 2013)) (internal quotations and additional citations omitted).

Here, Lucas alleges only that the collections were "improper." *See* Doc. No. 1 at ¶ 32. She has not alleged which of the numerous defendants allegedly violated the Act or specified any conduct that would constitute a violation. Lucas offers only the type of conclusory allegations that are insufficient to support a claim. *See Iqbal,* 556 U.S. at 679; *see also Neild v. Wolpoff & Abramson, LLP,* 453 F. Supp. 2d 918, 925 (E.D. Va. 2006) (holding that merely attempting to collect a disputed debt does not violate the FDCPA). Accordingly, the FDCPA claim will be dismissed without prejudice.

### D. <u>Wire Fraud</u>

The federal wire fraud statute *criminalizes* the transmission of wire communications in furtherance of a scheme to defraud. *See* 18 U.S.C. § 1343 (explaining that those found in violation may be fined or imprisoned). However, "the statute contains no provision allowing a private citizen to commence such an action." *Manigault v. Capital One, N.A.*, No. CV JKB-23-223, 2023 WL 3932319, at *2 (D. Md. June 8, 2023). *See also Uhre v. Emmett A. Larkin Co., Inc.,* 205 F. Supp. 2d 475 (D. Md. 2002) (quoting *Baker v. Data Dynamics, Inc.,* 561 F. Supp. 1161, 1166 (W.D.N.C. 1983)) ("[n]o private right of action exists for … for wire fraud."). Accordingly, this claim will also be dismissed.

6

Case 3:25-cv-00832-KDB-SCR    Document 7    Filed 12/08/25    Page 6 of 10

### E. Civil RICO

Lucas also attempts to assert a civil claim under RICO. RICO authorizes a private right of action for damages by any person injured in her business or property by reason of conduct violating the Act's criminal provisions. *See Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 641 (2008); 18 U.S.C. § 1964(c). To recover civil damages under RICO, a plaintiff must establish: "(1) conduct [causing injury to business or property]; (2) of an enterprise; (3) through a pattern; (4) of racketeering activity." *Brown v. Registrar of Deeds for Cleveland Cnty.*, No. 1:24-CV-00283-MR-WCM, 2024 WL 4896698, at *4 (W.D.N.C. Nov. 26, 2024), *aff'd,* No. 25-1267, 2025 WL 2506094 (4th Cir. Sept. 2, 2025) (quoting *Whitney, Bradley & Brown, Inc. v. Kammermann*, 436 F. App'x 257, 258 (4th Cir. 2011)) (citation omitted). The "enterprise" element requires allegations of two distinct entities: a "person" and "an enterprise" through which the person acts. *Id.* (quoting *Gilchrist v. Cook*, No. 7:07-0508-HFF-WMC, 2007 WL 950386, at *3 (D.S.C. Mar. 26, 2007)). A "pattern of racketeering activity" requires at least two predicate acts; *see* 18 U.S.C. § 1961(5), and "racketeering activity" includes enumerated federal crimes such as murder, kidnapping, robbery, bribery, extortion, and drug trafficking. *See* § 1961(1).

To state a civil RICO claim, a plaintiff must also allege continuity sufficient to distinguish racketeering activity from "garden variety commercial disputes." *Brown,* 2024 WL 4896698, at *4 (quoting *Cook*, 2007 WL 950386, at *3)) (citation omitted). Even construing Lucas' pro se Complaint liberally, she has failed to allege the existence of a distinct enterprise, the requisite continuity, or any predicate acts that would establish a pattern of racketeering activity. Her allegations therefore fall far short of the statutory requirements. Accordingly, the RICO claim will be dismissed without prejudice.

### F. Computer Fraud and Abuse Act

Lucas next alleges that NACAM and Nelsen "accessed computer systems to generate and transmit false financial information," in violation of the CFAA. Doc. No. 1 at ¶ 39. The CFAA prohibits unauthorized access to a protected computer or access that exceeds authorized limits. *TELECO, Inc. v. Mutolo*, No. 6:23-CV-03563-DCC, 2025 WL 1654613, at *9 (D.S.C. June 10, 2025). Although the statute does not define "without authorization," the Fourth Circuit has explained that authorization means a "formal warrant, or sanction," and that "access 'without authorization' occurs when an individual gains admission to a computer without approval." *Id.* (quoting *WEC Carolina Energy Sols. LLC v. Miller*, 687 F.3d 199, 205 (4th Cir. 2012)). By contrast, "exceeds authorized access" refers to situations where an individual has permission to access a computer but uses that access to "obtain or alter information" beyond the scope of approved authority. *Van Buren v. United States*, 593 U.S. 374, 379 (2021) (quoting § 1030(e)(6)). Importantly, neither definition encompasses the mere misuse of information that was validly accessed or, indeed, simply using a computer to transmit even allegedly false information. *See WEC*, 687 F.3d at 205.

Here, Lucas acknowledges that Nelsen was the "registered agent and property manager" of the Condo, and that NACAM managed the Condo complex. *See* Doc. No. 1 at ¶¶ 15–16, 29, 32. Lucas does not allege that NACAM or Nelsen accessed a protected computer without authorization, or that they exceeded authorized access by obtaining or altering information they were not entitled to access. To the contrary, her allegations confirm that Defendants were entitled to access her lease and payment records. Alleging that Defendants used authorized access to generate false financial information does not state a claim under the CFAA. The statute requires unauthorized access or exceeding authorized access; misuse of information after lawful access

falls outside its scope. *WEC,* 687 F.3d at 205 (finding no CFAA liability "for the improper *use* of information that is accessed with authorization"); *see also Van Buren,* 593 U.S. at 378 (explaining that the CFAA "covers those who obtain information from particular areas in the computer—such as files, folders, or databases—to which their computer access does not extend. It does not cover those who, like Van Buren, have improper motives for obtaining information that is otherwise available to them."). Accordingly, this claim will be dismissed.

### G. Gramm-Leach Bliley Act

Lucas alleges that "Defendants failed to safeguard nonpublic financial information." Doc. No. 1 at ¶ 40. However, her claim under the GLBA must be dismissed because the statute does not provide a private right of action. *See Harper v. Trans Union, LLC*, No. CV DKC 24-230, 2025 WL 1928021, at *5 (D. Md. July 14, 2025); *Lyles v. Medicredit, Inc.*, No. 21-CV-0789-TDC, 2021 WL 6501328, at *2 (D. Md. Oct. 12, 2021) (finding that the plaintiff's HIPAA and GLBA "claims fail as a matter of law because neither statute creates a private right of action."). Accordingly, the Court will dismiss this claim.

### H. Privacy Act of 1974

Lucas also alleges that "Defendants disclosed false personal financial information" in violation of the Privacy Act of 1974. Doc. No. 1 at ¶ 41. While the Act authorizes civil actions by individuals harmed by violations, it applies only to federal agencies. *Nix v. NASA Fed. Credit Union*, 200 F. Supp. 3d 578, 589 (D. Md. 2016) (additional citations omitted). Civil actions under the Privacy Act may not be brought against private entities or individuals. *Id*. (citing *Walker v. Gambrell*, 647 F. Supp. 2d 529, 536 (D. Md. 2009)) (additional citation omitted). Because all Defendants identified by Lucas are private entities or individuals, her Privacy Act claim must be dismissed.

## I. State Law Claims and Violation of the Securities Exchange Act

Finally, to the extent that Lucas attempts to assert claims for intrusion upon seclusion, fraud, constructive fraud, breach of contract, invasion of privacy, unjust enrichment, aiding and abetting fraud, libel/defamation, and for violations of the North Carolina Unfair and Deceptive Trade Practices Act and the Securities Exchange Act, those claims must also be dismissed. Lucas alleges no facts identifying which Defendant committed the alleged violations, or when or how they occurred. *See King v. Wilson*, No. 5:22-CV-01072-TLW, 2023 WL 4013499, at *2 (D.S.C. June 15, 2023) ("The complaint simply lists violations of a number of constitutional provisions—but not facts or factual assertions. Dismissal is proper here because without facts, there is not any persuasive basis for relief."); *Johnson v. United Parcel Serv., Inc.*, No. CV JKB-19-1916, 2020 WL 231379, at *2 (D. Md. Jan. 15, 2020) (declining to create arguments for a pro se plaintiff that "were not clearly presented" to the Court). Accordingly, these claims will be dismissed without prejudice.

## III. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Plaintiff's Motion for Reconsideration (Doc. No. 4) is **GRANTED** and Plaintiff's Motion to Proceed In Forma Pauperis (Doc. No. 2) is **GRANTED**;

2. Plaintiff's Complaint (Doc. No. 1) is partially dismissed as set forth above; and

3. Any recovery in this action will be subject to payment of fees and costs, including the $405.00 filing fee.

**SO ORDERED ADJUDGED AND DECREED.**

Signed: December 7, 2025

Kenneth D. Bell
United States District Judge